Thank you, your honor. Andrew Steers, on behalf of deputies Travis Kyle and Scott Kelly. May it please the court. Your honor, the need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal, absent an exigency or emergency. That's from Brigham City v. Stewart, 547 U.S. 389, and a couple other Supreme Court cases. And in that they are citing Wayne v. United States 318 F. Second 205, a D.C. Circuit case from 1963. Which goes on to state that the business of policemen and firemen is to act, not to speculate or mediate on what on whether the report is correct. That's the situation we're presented with here is we are arguing that the district court erroneously concluded that our deputies are not subject to qualified immunity in this case. The relevant facts are incredibly important here. On February 11, 2022, at 640 p.m., a person called 911, a passerby, and he reported seeing a person break a window. He then made three contradictory reports about what that person did. He first stated that it may be an occupant who forgot his keys and was breaking the window to get in. He then stated that that person may have run away or that that person may be inside. He repeated the statement about it could be an occupant who lost their keys a couple of times. Regardless, was any of that in the complaint? What was in the complaint was that was any of that in the complaint that you just articulated where what was in the complaint was that the person ran away and that he may be an occupant who forgot his keys. Where was that in the complaint that it may be an occupant that lost his keys? That was in the 911 call, but was it in the complaint? We're on a motion to dismiss counsel. Great point, Judge. I think you're correct. I think the complaint simply states that it was someone who ran away. So I am relying partially here on the 911 call because the district court. The 911 call was only mentioned once in the complaint. I'm arguing I'm discussing the facts in the 911 call because the district court did as well. We're on the noble review of a motion to dismiss a complaint, and you're articulating facts from a 911 call that are not in the complaint. That's true, Judge, and I'm articulating those facts because the court relied on them. I'm happy to move on. But we are reviewing this de novo, and we have to apply the correct standard to a Rule 12b6 motion. So why should we be able to consider facts that aren't in the complaint? If you want to do a summary judgment motion, that's fine, but you didn't do that in district court. Sure. Then I will move on and not discuss facts that are not found in the complaint, Your Honor. What is in the complaint is the plaintiff, in this case, alleges that deputies then arrived on scene shortly thereafter. They broke out the window. They removed the screen. The complaint alleges both that deputies did not hear voices inside, and the complaint also alleges in paragraph 76 that the deputies did report that they heard voices inside. We believe that is a crucial fact in this analysis because that corroborates their reasonable belief at the scene, which we believe gives rise to the exigency that there were people inside and that they had to act in order to secure the scene and act as if there was somebody inside who was a threat, an imminent threat to the lives and physical – of serious bodily injury of the occupants inside. And now that they hear those voices – yes, Judge? I'm sorry, I thought – Well, I have a question. Yes, ma'am. The standard for exigent circumstances in this circuit is a two-part test. There first has to be objectively reasonable basis to believe there is an immediate need to protect the lives or safeties of themselves or others. And secondly, the manner and scope of the search has to be reasonable. In your brief, you don't really even engage on the second prong. So why doesn't that mean that you lose on this argument? We believe that the intrusion was reasonable. But you don't argue that in your brief. I mean, I think you have one sentence. Yes, and I think the brief could have gone a little bit farther on that. But I do think that the intrusion was reasonable in the sense that what officers are doing is releasing a canine inside to locate the person and to neutralize them as quickly as possible. To locate what person? I mean, the canine was sent inside to bite the first person it found. Yes. Right? So it could have been the homeowner. Could have been a child of the homeowner. Could have been the homeowner's grandmother. I mean, how is that reasonable to send the dog in to bite anybody? It's reasonable to send the dog in because when the dog engages with someone and bites someone, that will then immediately direct the deputies to where that person is. And they have the ability to arrive there quickly. Otherwise, they're poking their way through a house without knowledge of who is there. Under the same circumstances, could they have shot into the house? No, I don't believe that would be reasonable because I believe a dog is usually less than lethal force. The dogs are trained to bite and hold. They're not trained to kill. Well, in this case, there were serious injuries as a result. In this case, there were injuries, yeah. And so it's okay? You send the dog in and it might have – the person it bit might have been the five-year-old child of the homeowner? That could have been the case. It also could have been the case that there was somebody being held at gunpoint and they bit a person who was holding them at gunpoint. There are multiple factual situations, I think, that we can look at here. But, yes, certainly, we would have to deal with that if that were the factual situation that a child had been bitten. In this case, though, who was bitten was the occupant of the home, something the deputies didn't know, which is a legend they complained, until they had him outside on the gurney. So our argument is, certainly under the first of the Graham factors, that at the point where they released the dog inside, they had arguable probable cause that a felony burglary was being committed, a home invasion burglary of a residence at night, which gives them a heightened level of concern because homes are most often occupied by their occupants at night when they're home. So we believe, under those circumstances, sending in a dog was the fastest way to resolve the situation. There was a reasonable amount of force under the situation. I'm still not sure what your answer is on the five-year-old child. If the dog goes in and does the same thing to a five-year-old child, you're saying, well, that would be different and that's not our case. But behind that, what I'm hearing you say is that would be okay, too. That would be reasonable. Is that right or not? I think there are circumstances where that might be reasonable, Judge. With a five-year-old? With a five-year-old. Well, circumstances where it might and circumstances where it might not, what are you talking about? What are the circumstances where it wouldn't be okay, then? The circumstances where it wouldn't be okay are, I would argue, where they have less probable cause, too, at the point where they send the dog in to believe that there's a burglary or when they know that there's a child inside. I think the circumstance where they're unsure who's inside, they hear voices inside, they have evidence of a violent break into the house, which breaking the window, we would argue, is a violent action. And then they send the dog in, that that is the fastest way to resolve the situation and is a reasonable amount of force because the dog is trained to bite. And even though it can cause serious injuries, they are trained to go after the arm or the leg. So those are situations. Well, the complaint says that he was in bed sleeping. Yes. And he's the only occupant. So what do we do with this voices being heard thing? Obviously, that's wrong. Can't the court infer that, in fact, there were not voices being heard based on the complaint? Based on the complaint, I think because the complainant does allege that officers said they heard voices, I think the plaintiff had put that fact at issue. And the plaintiff does not allege that officers knew that he was the only occupant or knew that he was asleep at the time. So he does allege that they heard voices. I mean, that's a fact which the plaintiff alleges. Given that allegation. Counsel, the paragraph 76 that you're referring to. And I'm sorry, I misspoke. It was 75. I apologize, Judge. Well, OK, that's not a problem.  Defendants claim to have heard someone speaking from inside the house. Yes. It doesn't seem to me that they're alleging that someone was speaking from inside the house. They're just saying that's what the defendants claim. Yes. But the test in this matter, and certainly if we look at Graham, what Graham also talks about is the test is what is a reasonable officer, an objectively reasonable officer in the place of the officers that night. And with the officers claiming they heard voices, that puts them in a situation where they believe there's someone who is at least speaking inside the house with a broken window in indicia of a burglary. So it's reasonable for them at that point to believe that it is necessary to use this amount of force and to effect an entry at that point. What about the other Graham factors? Were the officers in danger at the moment that they sent the dog into the house? I think officers entering a residence where they don't know who's in there are always in danger. They weren't entering the residence. They were outside the residence and they actually had officers all the way around the house. So they weren't in any immediate danger when they sent that dog in. No, and I apologize, Judge. The second one does not weigh in favor of the officers here. And what about the third one? How can Mr. Luthi have been resisting arrest when he was asleep in his bed and didn't have a clue that any of this was going on? I think the third Graham factor is the weakest Graham factor, of course. There's the argument that the officers believed he was hiding, but I think that's pretty weak when you just look at the complaint. And it's obviously alleged that he was sleeping. So I would agree that weighs against us. However, the second Graham factor is not only the officers, but others. And that is what we're arguing, is that the officers, when they're looking at a residence at night and they have to believe that it is occupied, especially since they heard a voice, that they're seeking to protect the others, not themselves. But the complaint alleges that they didn't hear any signs of violence or pleas for help. I mean, to me, that makes it very different from Brigham City, where they could look in the house and see a juvenile being punched, right? Yes, I do think Brigham City would be distinguishable. So are you saying anytime officers see a broken window and they hear voices in the house, they can send in a police dog to bite the first person they see? No, I'm not saying that. I think any time that officers have indicia of a home burglary. And I also think it's not just a home. It's a home at night. So that increases the officer's belief that there are other residents in the house. And then you have the voices inside. So I think on the face of the complaint, they certainly have a reasonable belief that there's an exigency at that point. And I'm not asking the court to make a blanket statement at all that any residents, any broken window, they can simply send someone inside. I think on these facts, and I'm adding in the broken window, or I'm adding in the fact that they say they heard voices inside as an added fact. I think that that increases the reasonable belief that there are people inside and that the fastest way to resolve the situation is to send the dog in. So the allegation in the complaint is that they claim to hear someone. So not voices, but maybe one voice. But apart from that, I'd like to ask you about something different. Why wasn't the search of the house after Mr. Luschig left for the hospital an unconstitutional warrantless search? I mean, by that point, they had his driver's license, he was the occupant, but they still went in and searched the house. I mean, there's no exigency at that point. So what's the justification for that? Justification for that is even though he has said there's no one home, under the facts of the complaint, he was asleep and we have a broken window. So what police are doing is just simply a protective sweep to make sure there's no one else in the home. They do still have a broken window, and what they're doing at that point, we would argue, is simply screening to make sure there's no one else injured in the home or hiding in the home. So the complaint alleges it was a full-on search, not a sweep. Yes, that is what the complaint alleges. So assuming we take that allegation as true, is there any argument that that search is not unconstitutional? I would argue that that search is reasonable to the degree that it is simply a search for other people. To the degree that it would be a full-on search, I think it would be hard to argue that was also constitutional. Well, it's the plaintiff's house. Why don't you have to get the plaintiff's consent to search for burglars in his house? If the plaintiff doesn't want cops in there to search for people in his house, seems like he can say so. That's true. He could, Your Honor, and I don't really have an argument on that point. So you concede that he had to consent to that second search? I concede that there is that one way this could have been a legal search would be for him to consent. I think that doing a quick protective sweep, which is what I would argue this is, obviously understanding that we're at the motion to dismiss stage and we have to take the inferences in favor of the plaintiff, but I would argue that a quick protective sweep is allowed under the Constitution. And I think I'm out of time. Thank you very much. Thank you, Counsel. Mr. Schiffler, you have to unmute your mic. My apologies. Good morning, Your Honors. My name is Zach Schiffler, attorney for Plaintiff Appellee. May it please the court. Respectfully, this is an easy case, especially at the motion to dismiss stage. It's not even close. The linchpin to defendants entire argument is that an exigency existed, which did not exist here. Defendants improperly attempt to shift the burden to plaintiff to establish the absence of an exigency, which essentially means that courts would begin their analysis by assuming an exigency and then requiring plaintiffs to disprove that assumption. But this motive, that motive analysis would contravene well-established law, which requires police officers to justify their conduct when they invade the sanctity of a person's home. And of course, we all know Fourth Amendment protections are the greatest when a person is inside their home, their castle. Without an exigency, defendants cannot enter plaintiff's home. They can't enter the home. The dog doesn't go in. The dog doesn't go in. Plaintiff is embitten and arrested. Without an exigency, none of what happened here is justified. And without an exigency, plaintiff was not even required to leave his house, even if the officers were outside yelling and demanding that he exit. Story v. Taylor clearly establishes this point. And so as you've seen in the briefing and you hear from my friend across the aisle, defendants are making the assertion that they reasonably suspected a burglary and believe someone was being held hostage inside the home. On the first prong of exigency, defendants did not have reasonably trustworthy information of a burglary, much less a hostage situation. It was a mere hunch, and they used significant force based on this mere hunch. Well, it wasn't more than a hunch. They did have information that someone had broken the window at night at a home. Why wouldn't that at least rise to the level of reasonable suspicion of a home burglary? Because, as the court has already pointed out, the complaint merely alleges that someone broke the window and ran away. Running away after breaking a window does not satisfy the element of an unlawful entry. Counsel, did the district court err in relying on the 911 call and the other audio files that were submitted in the defendant's motion? Yes, for two reasons. One, I mean, really, because it's underinclusive and overinclusive. Because it doesn't include all communications with the officers prior to sending the dog through the window. The dispatcher told the 911 caller that officers would call him, but that conversation is obviously not part of that recording. It's overinclusive because it was not limited to the 911 call from the neighbor, which is the only portion of the recording mentioned in the complaint. Nonetheless, because the 911 caller does make vague and equivocal and, as counsel said, contradictory statements, we think the net effect of that 911 call actually favors plaintiff on this appeal particularly. So although I do believe the district court erred in considering, I think ultimately it favors plaintiff. And so going back to the evidence that they did not have supporting a burglary, because, again, the complaint alleges that the person ran away, which is not consistent with an unlawful entry. And even if the court were to consider the 911 call, the 911 caller said multiple times that the person may have just broken their keys or forgot their keys and broken the window to get in on a freezing cold night, which, again, is not evidence of a burglary. So I maintain my position that they had zero information, nothing rising beyond a hunch of a burglary, much less a hostage situation, because nobody reported multiple voices or any signs of violence coming from inside the house. And as Judge McHugh, you pointed out, there are two prongs, and quite frankly, defendants lose on both prongs here. Even if the court were to find an exigency, which it should not, the scope and manner of the response to the alleged exigency was reckless and objectively unreasonable for the reasons the court has already pointed out. The dog is going to go inside to find and bite whomever it finds. This isn't a situation where the police had specific information about a person inside that wasn't allowed to be. It's not like they can give the dog a scent or a trail to follow and say, hey, only go find and bite this person with this smell. They didn't have any of that information. And, again, as the court has pointed out, if there was a hostage inside, if there was a victim, I mean, the victim is probably likely trying to get away from its captor. These dogs are trained to bite resisting people. The dog is going to misconstrue that and then bite the victim, making all of this just even worse than it already is. What would have been a reasonable response? Oh, that's very simple. They walk up. They knock on the door. They lean their head over to the broken window. They shout out, Douglas County Sheriff's Department, police are here. We see there's a broken window. Is everyone inside OK? They listen with their ears. They look with their eyes. They use their senses to get any corroborating evidence or use their senses to dispel any suspicion they had of a burglary, a hostage situation, anything like that. If he's asleep, doesn't respond, then what? Then they use their senses to see if there's anything violent. If there's any. Council, I think we've lost the feed. I'm going to ask the clerk to see if we can get back on track, I think. Mr. Sheffler, can you hear me? I hear you now. It got a little choppy for a second. OK, I think you kind of froze up and then we lost you. But maybe why don't you dial back maybe 30 seconds and go from there? OK, let's rewind. Where was I? So what do they do? They they walk up to the door. They knock on the door. They make announcements through the window. Douglas County Sheriff's Department. Just Phillips, I think you asked, you know, if there's no response, what do they do? Well, they continue to observe. They listen. They're more than welcome to hang outside and listen and see if any lights come on. Hear of any sounds. See if there's anything supporting this wild allegation that there's a hostage being held captive inside. If they don't get any corroborating evidence, they can hang out there as long as they want. Or they can go back and do some police work on a different task. What do you make of the fact that the screen was replaced in the broken window? Isn't that what's alleged is that the screen had been put back? Are you talking about after the incident? No. After they went through and they came and they saw the broken window. I think the record says that the screen was in place and they had to remove the screen and break out the rest of the glass to put the dog in. That's paragraph 20 of your complaint. Thank you. And to me, that seemed like a thing for a burglar to do. It's true. Let me clarify and perhaps that could have been elaborated more specifically. The way that that paragraph is intended to read is that the screen was broken. It allowed entry, but it needed to be removed in order to make it easier to put the dog through safely. So it's not like it was a fully intact screen. There was a hole cut through it. That's how the person entered the house. That's how plaintiff entered the house after breaking the window. He just didn't entirely remove the screen. So the structure of the screen was there, but there was a hole in it. All right. I misunderstood the allegation. You read it literally, and isn't that what we're supposed to do in a motion to dismiss? All this other talk of cut screens, do we consider that? So the screen was in place, and I think a reasonable inference, since we know that the plaintiff was inside, he broke the window. The reasonable inference is since he broke the window to get inside, he also had to cut the screen in order to get inside. So you referred to clearly established law a few minutes ago. What's your best case to show that sending the dog in the house to bite was a violation of clearly established Fourth Amendment law? Well, at the Supreme Court, the court sets out very clear, bright-line rules in Brigham City. In the Tenth Circuit, I would say McNerney, I believe is how you pronounce it, Story v. Taylor. And then I would also mention this court's recent decision in Cuervo v. Sorensen, which is particularly instructive on the second prong of exigency. I know, Judge McHugh, you were on that panel, and Cuervo officers were serving a search warrant relating to a stolen snowcat. When the SWAT team arrived, there was no attempt to contact anyone inside, and the officers chose to fire tear gas into the house. As the court stated in oral argument, serving a search warrant doesn't automatically mean officers get to use significant force. I think that's especially important here because the officers didn't even have a warrant. They didn't have an order from a neutral third party, a judge saying there was probable cause of a crime, or that there's probable cause that evidence of a crime would be found at this location. Instead, here, the defendants acted on the vague and equivocal call of a neighbor whose reported dispatch clearly indicated that there may not have been any crime at all. Echoing comments that have been made here during oral argument for Cuervo, Judge Carson asked the counsel for defendants, if officers are serving a search warrant at my grandmother's house and she doesn't open the door, are they allowed to just tear gas her? Judge McHugh, I believe it was you that echoed that rhetorical question by stating that not opening the door is not enough to justify an armed assault, according to Supreme Court law. If there's nobody dangerous inside, if there's no evidence of anyone being dangerous inside, then this level of force is excessive per se. The same results should apply here. So, Judge Matheson, I say McNerney, Story v. Taylor, and Cuervo for its persuasive value. Oh, sorry. In looking at your excessive force claim, do we have to break it out into pre-restraint and post-restraint force? Our cases tend to look at those separately, don't they? I would have agreed with that up until Vette. And as we point out in our briefing, Vette says that you don't get to use significant force without a legitimate justification, such as when a person is subdued or poses no threat. Here, we fall in the latter part of that disjunction, as the court has already pointed out during the first part of oral argument. There was no indicia of violence going on. There was no indicia of an ongoing active threat on the inside of the house. And so while many of this court's cases do involve a subdued, already apprehended subject, I don't believe the case law restricts it to someone who's subdued or apprehended. And then, moreover, being subdued and apprehended is up to interpretation. For example, the Vette opinion that you offer, Judge McHugh, doesn't have the word handcuff, handcuffs, or handcuffing anywhere in it. So although the court acknowledged that the plaintiff in that case was apprehended or subdued, it did not describe the way in which he was apprehended or subdued. I don't know. Does it really matter if he's subdued? Well, I mean, that just makes it even stronger. Of course, if a dog is biting a person in handcuffs or a person that's under control of an officer, I think that just makes the case even stronger. Where I'm arguing is that it's not limited to being subdued or pre-restrained. The salient question is whether the person poses an immediate threat at the time the officers use force. And so finishing up on the unlawful entry claim, I mean, based on the allegations in the complaint, no reasonable officer would have reasonably believed that a person needed emergency aid, nor would a reasonable officer have believed that blindly sending a canine into the home was a reasonable response to this type of exigency under these circumstances. As I said, defendants lose on both prongs of exigency. The legal contours of a warrantless entry into the home are truly beyond debate, and qualified immunity should be denied on that claim. I would like to move on. If I just ask you on the second, well, I've been calling it the second search, but it's the search of the home after he's taken to the hospital. I don't see a lot of discussion of that search in the briefs or the district court opinion. There's a little bit, but are you even relying on that second search at this point for your claim? Yes, Your Honor, we are. And the reason that wasn't the focus of a lot of discussion, at least from our part, because that's not where the damages actually flowed from. Now, I agree there are damages just from someone passing the threshold without a legal justification, that violation of the sanctity of a home. But that's not quite the same as being awoken in your bed by a dog that you don't own, that's not supposed to be in your house, jumping onto your bed, biting your abdomen, your hand, your forearm, and your upper arm. So while that is a constitutional search, because they did not have a warrant, they did not have consent, and they had already dispelled any unreasonable belief of an exigency, there was no reason to go in for that second search. So I do maintain that as a second unconstitutional search, but I also acknowledge that it wasn't a heavy part of our briefing because it wasn't the focus of where the damages came from. Moving on to the excessive force, starting with the first factor, as I've already indicated, defendants did not have a reasonable belief of burglary. That's not what they're arguing, they're arguing criminal mischief. Well, actually, I believe counsel just indicated a moment ago that they argued that they had arguable probable cause for burglary, but I do acknowledge that that was not in their briefing. Even for criminal mischief, such a low-level nonviolent misdemeanor would not justify this level of significant force, particularly when you're dealing with a non-fleeing person. Casey v. City of Federal Heights clearly established that bright-line principle. It applies with obvious clarity here. Third, as the court has already pointed out, it's basically impossible for a plaintiff to have resisted or fled police under these circumstances. So because Graham applies with obvious clarity, along with this court's decisions in Casey, Morris v. Noe, and Vette, the defendants were on clear notice that their use of significant force without an immediate threat violates the Fourth Amendment. I see I am over time, but if there are any other questions, I would be happy to answer them. Thank you, counsel. I think you're just right because we interrupted you, but I think he's both out of time and we don't have time for rebuttal. So we will, unless there aren't any other questions, we will take the case as submitted. We appreciate your appearing before us via Zoom this morning. Counsel are excused and the court will stand in recess.